GOOLD PATTERSON ALES & DAY
Douglas L. Monson, Esq. (SBN 7829)
4496 South. Pecos Road.
Las Vegas, NV  89121
Telephone: (702) 436-2600
Facsimile: (702) 436-2650
dmonson@gooldpatterson.com

Attorneys for Plaintiff, Incorp Services, Inc.

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| **INCORP SERVICES, INC.**, a Nevada corporation, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| **THE BETTER BUSINESS BUREAU OF SOUTHERN NEVADA, INC.**, a Nevada Non-Profit Corporation, **COUNCIL OF BETTER BUSINESS BUREAUS, INC.**, a Delaware Non-Profit Corporation, **SYLVIA CAMPBELL**, an individual, and **DOES 1-10**, inclusive, | |
| Defendants. | |

**COMPLAINT**

Plaintiff Incorp Services, Inc. ("Incorp") brings this Complaint against Better Business Bureau of Southern Nevada, Inc., ("BBBSN"), Council of Better Business Bureaus, Inc. ("CBBB"), and Sylvia Campbell ("Campbell") (collectively "Defendants"), and alleges as follows:

**INTRODUCTION**

1.   Incorp is the largest Nevada-based national registered agent service, and has over 75,000 active clients around the world.

2.   Incorp enjoys a sterling reputation in the registered agent industry for the quality of its services and its responsiveness to customer concerns.

3.   Defendants advertise themselves as an unbiased public-interest organization, designed to provide consumers with honest and accurate information about businesses.

4.   Defendants' advertisements are false, as their ratings of businesses are intentionally biased and inconsistent, and in particular, heavily favor businesses that have chosen to pay money to and participate in Defendants' Accreditation program.

5.   In fact, when a business pays money to Defendants to participate in Defendants' Accreditation program, Defendants serve as these businesses' agents in promoting these businesses.

6.   Incorp has declined to participate in Defendants' Accreditation program, which would require Incorp to pay Defendants an annual fee.

7.   As a result of this decision, Defendants have intentionally assigned Incorp an inconsistent letter grade rating, which often appears as an "F" rating.  Defendants have published this rating on their BBBOnLine system, which is available to the public.

8.   Defendants' rating of Incorp is inaccurate and inconsistent with the rating criteria published by Defendants.  In fact, on multiple occasions, Defendants' rating of Incorp has fluctuated several letter grades in a single day, and then appeared as "Not Rated," an unlikely—if not impossible—occurrence under Defendants' advertised rating formula.

**COMPLAINT**

9.     Moreover, Defendants have systematically disregarded Incorp's attempts to understand the complaints that have been filed against Incorp with Defendants, to respond to consumer complaints, to communicate with Defendants, and to repair Incorp's rating published by Defendants.

10.     Based on Defendants' self-promotion as an unbiased public-interest organization, millions of consumers have relied on Defendants' BBB OnLine service each month to select businesses to use.

11.     When prospective and existing customers of Incorp use Defendants' BBB OnLine Service and view Incorp's inaccurate "F" rating, they are discouraged from using Incorp.

12.     As a result, Incorp has lost both prospective and existing customers as a result of Defendants' misconduct.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over the federal false advertising claims pursuant to the Lanham Act, 15 U.S.C. §1121 and 28 U.S.C. §§1331 & 1338. The Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. §1367(a), in that the state law claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14.     This Court has personal jurisdiction over BBBSN and Campbell because they reside and conduct business in the State of Nevada.

15.     This Court has personal jurisdiction over CBBB because it conducts business within the State of Nevada, in that it is, on information and belief, the franchisor of BBBSN, which was formed specifically to conduct business in Nevada.  On information and belief, BBBSN is under the control of CBBB and is subject to a franchise agreement as drafted by the CBBB, for operation in Nevada.  This Court also has personal jurisdiction over CBBB because the harm resulting from its misconduct, which is at issue in this complaint, was most prominently felt in the State of Nevada.

**COMPLAINT**

16.     Venue is proper in the District of Nevada pursuant to LR IA 6-1 and 28 U.S.C §1391(b)(2) &(c), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and because the Defendants are subject to personal jurisdiction in this District.

**PARTIES**

17.     Plaintiff Incorp Services, Inc. is a Nevada corporation, with its principal place of business in Clark County, Nevada.

18.     Defendant Better Business Bureau of Southern Nevada, Inc. is a Nevada non-profit corporation with its principal place of business in Las Vegas, Nevada.

19.     Defendant Council of Better Business Bureaus, Inc. is a Delaware non-profit corporation with its principal place of business in Arlington, Virginia.

20.     On information and belief BBB is a franchisee of CBBB.  CBBB exercises control over BBBSN, including BBBSN's creation, existence, and termination.

21.     Defendant Sylvia Campbell is an individual, who on information and belief, resides in Las Vegas, Nevada. Defendant Campbell is the President and CEO of BBBSN.  On information and belief, Campbell exercises day-to-day control over BBBSN, and is responsible for the employees and actions of BBBSN.

22.     Incorp is uncertain of the true names and capacities of those defendants sued by the fictitious names Does 1 through 10, who also are responsible and liable for the injuries alleged in this Complaint and who proximately caused damage to Incorp. Incorp will amend this complaint to add the true names and capacities of the Does when they become known.

23.     Upon information and belief, at all times all Defendants were the principals, agents, and/or co-conspirators of each other, and each acted within the course, scope, and authority of such relationship so that, as a result, all Defendants are jointly and severally liable for the acts alleged herein.

**INCORP'S BUSINESS**

24.     Incorp provides a variety of company formation and registration services,

3

**COMPLAINT**

1   including registered agent services.

2        25.    Incorp has an established track record of providing high quality, trouble-

3   free, and efficient registered agent services to its clients.

4        26.    As a result of Incorp's history of providing excellent registered agent

5   services, Incorp enjoys a sterling reputation in the industry and a competitive advantage

6   over other registered agent services.

7        27.    Incorp is currently the largest Nevada-based national registered agent firm,

8   the second largest registered agent in Nevada by volume of active business entities

9   represented, and the fourth largest registered agent firm nationally.

10       28.    As of January 2009, Incorp had over 65,000 active clients around the

11  world.

12       29.    Incorp is known in the registered agent industry for its unparalleled

13  customer service.  Incorp seeks to resolve any and all customer disputes quickly and with

14  the maximum benefit to its customers.

15       30.    As a result, Incorp has received few customer complaints.   And of those

16  few complaints it has received, Incorp has taken swift affirmative steps to resolve these

17  complaints as quickly as possible.

18       31.    To date, Incorp has a customer satisfaction rate well above 99.9%.

19       32.    Incorp's reliability and trustworthiness are important factors for customers

20  in selecting a registered agent service, and reflect Incorp's highly regarded customer

21  service.

22                              **DEFENDANTS' BUSINESS**

23       33.    CBBB is a non-profit corporation established in 1912.

24       34.    CBBB claims that its mission is to be the leader in advancing marketplace

25  trust.  CBBB further claims that it seeks to accomplish this mission by: a) creating a

26  community of trustworthy businesses; (b) setting standards for marketplace trust; (c)

27  encouraging and supporting best practices; (d) celebrating marketplace role models; and

28  (e) denouncing substandard marketplace behavior.  CBBB further claims that it exists so

**COMPLAINT**

1  consumers and businesses alike have an unbiased source to guide them on matters of

2  trust.

3        35.     Given its longevity and its ostensible mission, many consumers mistakenly

4  believe that CBBB is a governmental or quasi-governmental entity.

5        36.     On information and belief, more than 70% of consumers in the United

6  States believe that CBBB is a governmental organization.

7        37.     CBBB is a network hub for regional franchises in the United States and

8  Canada.

9        38.     On information and belief CBBB has more than 124 franchises in North

10  America, which have ostensibly agreed to serve businesses and consumers in their

11  respective communities.

12        39.     On information and belief, BBBSN is a regional franchise of CBBB,

13  ostensibly serving businesses and consumers located in Southern Nevada.

14        40.     While BBBSN is independently governed by its own board of directors,

15  BBBSN is required to satisfy CBBB's requirements, which requirements are monitored

16  and enforced by CBBB on a continuous basis.

17        41.     On information and belief, as part of its franchise agreement with CBBB,

18  and as part of its required mission, BBBSN has agreed to foster honest and responsive

19  relationships between businesses and consumers, instilling consumer confidence, and

20  contributing to a trustworthy marketplace for all.   Thus, BBBSN claims that it is a

21  resource for consumers to turn to for objective, unbiased information about businesses.

22        42.     CBBB—and  its  regional  franchises  (including  BBBSN)—offer  an

23  "Accreditation" service for businesses.

24        43.     Accreditation ostensibly means that CBBB—and the relevant regional

25  franchise—have determined that a business meets their Accreditation standards, which

26  include a commitment to ethical and honest business practices and a commitment to

27  undertake good faith efforts to resolve any consumer complaints.

28        44.     One hard and fast requirement of accreditation is the payment of an

COMPLAINT

1  annual fee.  To become accredited by BBBSN, a business must pay BBBSN a yearly

2  Accreditation fee, which varies based on an undisclosed formula.

3       45.     The BBBSN Accreditation fee ranges from anywhere between several

4  hundred dollars a year to several thousand dollars a year.

5       46.     On information and belief, BBBSN pays a percentage of every annual

6  Accreditation fee to CBBB.

7       47.     In addition to advertising their Accreditation service, Defendants engage in

8  considerable self-promotion of their other services.  In particular, Defendants heavily

9  promote their online presence, which they refer to as BBBOnLine.

10      48.     Defendants advertise that their BBBOnLine service provides consumers

11  with online access to Defendants' ratings of businesses.

12      49.     Defendants further advertise to consumers that Defendants' BBBOnLine

13  service and Defendants' rating system are backed by the standards, credibility, and the

14  high name recognition of Defendants, which brings their almost 100-year-old reputation

15  for marketplace trust to the Internet.

16      50.     Defendants further advertise that Defendants BBBOnLine service and

17  rating systems exist so that consumers and businesses alike have an unbiased source to

18  guide them on matters of trust in the marketplace.

19      51.     Defendants further advertise that their services provide educational

20  information and expert advice that is free of charge and readily accessible.

21      52.     Defendants further advertise that they should be relied on by consumers as

22  their key advisors, most reliable evaluators, and most objective experts on the topic of

23  trust in the marketplace.

24      53.     Defendants further advertise that to make the BBBOnLine service robust

25  and reliable, Defendants closely monitor thousands of businesses on an ongoing basis.

26      54.     Defendants further advertise that over a million users visit BBOnLine each

27  month.

28      55.     Defendants encourage Accredited businesses to advertise their relationship

**COMPLAINT**

1    with Defendants by displaying the BBB seal on their Internet websites.  When the seal is
2    displayed on a business's website, it is designed to contain a hyperlink to Defendants'
3    BBBOnLine service.

4         56.    Once a consumer arrives at BBBOnLine, the consumer can search for any
5    business and view Defendants' rating of that business.

6                 **DEFENDANTS' INCONSISTENT AND BIASED RATING SYSTEM**

7         57.    Defendants' advertisements are designed to create the appearance that
8    Defendants provide impartial and accurate information to consumers about businesses
9    through Defendants' BBBOnLine service and rating system.

10        58.    In particular, Defendants claim that their rating system is an honest and
11   accurate reflection of a variety of criteria, which reflect the trustworthiness, quality, and
12   responsiveness of a business.

13        59.    However, Defendants' rating system is inconsistent and biased, and
14   Defendants assign businesses letter grades that in no way reflect trustworthiness, quality,
15   and responsiveness of a business.

16        60.    In particular, whether a business has paid an annual fee to Defendants in
17   order to become accredited is a factor in determining the business's rating, though such
18   factor does not make a business any more or less trustworthy than a comparable non-
19   accredited business.

20        61.    In fact, whether a business has paid to become accredited is a significant if
21   not the determinative factor in a business's rating.

22        62.    In January 2009, Defendants adopted a new system for rating businesses.
23   Previously, Defendants would give businesses either a satisfactory or unsatisfactory
24   rating.  Under the new system, Defendants give businesses a letter grade ranging from
25   "A+" through "F."

26        63.    On information and belief, on average, Defendants assign an accredited
27   business a letter grade that is two to three letter grades higher than the grade assigned to
28   a comparable non-Accredited business.

**COMPLAINT**

64.     On information and belief, this grade discrepancy exists even when a non-accredited business has a larger number of customers than a comparable accredited business, has received far fewer complaints than the accredited business, and has undertaken good faith efforts to resolve all the customer complaints it has received.

65.     On information and belief, when a business refuses to become accredited and pay Defendants an annual fee, Defendants purposefully lower that business's letter grade and/or fail to review the business's correspondence with Defendants and/or refuse to acknowledge efforts that the business has taken to promote its trustworthiness, quality, and responsiveness, including its good faith efforts to respond to all consumer complaints.

66.     Through this grading discrepancy, Defendants have created a striking benefit for businesses to become accredited, *i.e.* they will receive a higher grade.

67.     Defendants do not disclose that the payment of the Accreditation fee and the resulting accreditation are determinative of a business's letter grade.

68.     Because Defendants advertise their rating system as accurate and unbiased, and because consumers rely on Defendants' BBBOnLine rating system for selecting businesses, and because Defendants' rating system is fundamentally inaccurate, Defendants regularly mislead consumers about the trustworthiness, quality, and responsiveness of various businesses—both by unfairly disparaging non-Accredited businesses and by inaccurately praising accredited businesses.

**DEFENDANTS TARGET INCORP WITH FALSE ADVERTISEMENTS**

69.     Since as early as 2008, Defendants have listed Incorp on their BBBOnLine system and provided consumers with a rating of Incorp.

70.     Beginning in January 2009, Defendants assigned a letter grade to Incorp, and made that letter grade available to consumers through Defendants' BBBOnLine system.

71.     During 2009, Defendants would send Incorp copies of the few complaints that consumers had filed with Defendants regarding Incorp.  Defendants would also provide Incorp with a time period to respond to the consumer complaint and to provide

COMPLAINT

1  Defendants with documentation of Incorp's response (the "Response").

2      72.    Incorp quickly responded to all complaints it received from Defendants and
3  promptly provided Defendants with Incorp's Responses.

4      73.    Incorp took considerable efforts to ensure that Defendants received
5  Incorp's Responses, including by sending the Responses to multiple email accounts held
6  by Defendants and by U.S. Mail.  Incorp also made numerous follow-up phone calls to
7  Defendants to ensure that they had received the Responses.  Incorp also began using
8  "read receipts" to ensure that the emails containing the Responses were received and
9  viewed by Defendants.

10     74.    Nonetheless, on multiple occasions in 2009, Defendants claimed never to
11  have received Incorp's Responses, or to have lost Incorp's Responses, or to have
12  misplaced Incorp's Responses.  In each of these situations, Incorp's grade took a nose
13  dive, typically becoming an "F" because Defendants recorded that Incorp had not
14  provided them with a Response.

15     75.    During 2009, Defendants also admitted to assigning complaints regarding
16  other companies to Incorp, and/or assigning complaints to Incorp that did not exist, and/or
17  adding and removing complaints to Incorp's records without any communication to Incorp
18  or Response from Incorp.

19     76.    As a result, since January 2009, Defendants' rating of Incorp has vacillated
20  from "B-" to "F," and has included "No Rating" at numerous times, with no cognizable
21  basis for the lack of a rating.

22     77.    When Incorp has inquired about having an "F" rating, Defendants have
23  explained that the "F" rating was automatically computed when consumer complaints
24  existed about Incorp, which Incorp had not responded to.

25     78.    Despite this explanation, Incorp assiduously responded to every customer
26  complaint sent to Incorp by Defendants, and sent its Responses in multiple forms to
27  Defendants.

28     79.    When Incorp inquired about what complaints remained open, Defendants

**COMPLAINT**

became elusive or argumentative.  At one point, Defendants refused to send Incorp the purported consumer complaints, saying that Incorp would have to pay a fee for each complaint.  At other times, Defendants would say that a complaint had been removed or taken care of, while refusing to identify the complaint to Incorp or Incorp's Response to the complaint.

80.    Incorp's "read receipts" reveal that at times Defendants received and reviewed Incorp's Responses but failed to modify their record of Incorp to reflect the Responses.

81.    As a result of Defendants' misconduct, on multiple occasions Incorp's rating in Defendants' BBBOnLine system dropped to an "F."

82.    Moreover, even when Defendants admit that they received Responses to all customer complaints, Defendants' rating of Incorp rarely—if ever—went above a "B-."

83.    On information and belief, Defendants have had no factual basis for assigning these various letter grades to Incorp, and have not employed the formula as detailed in their advertisements.

84.    On information and belief, the two most important—if not decisive—factors in Defendants' actual rating of Incorp have been: a) the fact that Incorp is not accredited; and b) the existence of consumer complaints regarding Incorp, to which Defendants claim that Incorp never provided Responses—though Incorp sent Responses to every complaint.

85.    On multiple occasions, BBBSN has solicited Incorp to become an accredited business and to pay the BBBSN an annual Accreditation fee.

86.    Incorp has refused Defendants' solicitation and refused to pay Defendants the annual Accreditation fee.

87.    Defendants have recklessly or purposely refused to amend Incorp's record in the BBBOnLine system to reflect the Responses sent to Defendants by Incorp.

88.    Moreover, on information and belief, Defendants have artificially lowered Incorp's rating as a result of their dislike for Incorp.

**COMPLAINT**

89. This grade deflation is evident by examining the BBBOnLine records of comparably sized companies in the registered agent industry and other industries. Such an examination reveals that accredited companies receive far better ratings than non-Accredited companies, even when the non-Accredited companies have received fewer complaints and have a larger customer base.

90. Moreover, Defendants took affirmative steps to derail Incorp's attempts to improve its relationship with Defendants. For example, by June 2009 Incorp had developed a functional relationship with a representative of Defendants, who had offered her personal email address for Incorp to send their Responses.

91. Shortly thereafter, Defendants replaced this representative with a new representative, Eve Kimball, who proceeded to mishandle Incorp's records, resulting in low grade ratings, including "F"s.

92. During this transition, Defendants admitted that they failed to amend Incorp's records to include Responses, which resulted in an "F" rating of Incorp.

93. Defendants' misconduct persisted after the transition. Defendants recklessly or intentionally did not receive Incorp's Responses on multiple occasions.

94. Moreover, on information and belief, Defendants assigned consumer complaints to Incorp, which did not exist or which concerned other companies, and then withdrew those complaints when Incorp questioned Defendants about them.

95. Moreover, on any given day during this time period, Incorp's letter rating could vacilate several times, from "F" to "No Rating," to "C," without any explanation.

96. For example, on December 7, 2009, Incorp's letter rating changed several times from "F" to "No Rating." Moreover, the reason behind the "No Rating" itself changed. At times, BBBOnLine explained that the "No Rating" existed because Defendants had "not processed any complaints against this business in the last 36 months, [their] standard reporting period." This statement was false. At other times on December 7, 2009, the "No Rating" existed because "the rating is being reviewed and/or updated." On information and belief, this statement was false also.

COMPLAINT

97. At no time have Defendants explained this vacillation in Incorp's grades, and on information and belief, no such vacillation is possible under the parameters of the letter rating system advertised by Defendants.

**DEFENDANTS' BBBONLINE SERVICE IS SUSCEPTIBLE TO EASY MANIPULATION**

98. As discussed above, Defendants advertise to consumers that Defendants' BBBOnLine service and Defendants' rating system are backed by the standards, credibility, and the high name recognition of Defendants, which brings their almost 100 year old reputation for marketplace trust to the Internet.

99. In fact, Defendants BBBOnLine rating system as applied to Incorp (and other businesses) is subject to easy manipulation by any third party in a matter of seconds. Thus, Defendants' BBBOnLine rating system is not credible, backed by trustworthy standards, or otherwise reliable.

100. By making minor alterations to the URL that Defendants provide to users of their BBBOnLine system, third parties can create a web page, under Defendants' domain name, that reflects any grade they want for any business listed in the BBBOnLine system.

101. Unscrupulous third parties can then spread these URLs throughout the Internet, creating the impression to millions of Internet users that Defendants have assigned Incorp (or another business) a different letter grade than it has actually assigned.

102. For example, if an Internet user enters the following domain name of Defendants into his or her web browser:

- southernnevada.bbb.org/bbb_rated_acc_rpt.asp?bbbid=59882&tr=A&lg=A&ex=1

The web browser displays an "A" letter grade for Incorp, as revealed in Exhibit 1.

103. By comparison, if an Internet user enters the following domain name of Defendants into his or her web browser:

- southernnevada.bbb.org/bbb_rated_acc_rpt.asp?bbbid=59882&tr=F&lg=F&ex=1

The web browser displays an "F" letter grade for Incorp, as revealed in Exhibit 2.

**COMPLAINT**

104.   There is a significant risk that third parties will exploit this simple manipulation and proliferate hyperlinks to Defendants' web pages that display poor ratings of Incorp, even when those poor ratings were inconsistent with the actual rating of Incorp in the BBBOnLine system.

105.   In or around March 2010, Defendants changed their grading system to include a "Rating Explanation." For Incorp, the sole basis of its rating was the "number of complaints filed against this business." Notwithstanding, this explanation, Defendants then caution that a "company's size and volume of transactions" may account for the number of the complaints.

106.   Moreover, this new rating system is internally inconsistent. As a limited example, as of March 22, 2010 Defendants stated that Incorp had 27 complaints, which resulted in a C rating. By comparison, a prominent Las Vegas hotel had 26 complaints, which resulted in an A+ rating. Not coincidentally, this hotel is a "BBB Accredited Business."

**THE EFFECT OF DEFENDANTS' MISCONDUCT ON INCORP'S BUSINESS**

107.   As Defendants have advertised, millions of users visit the BBBOnLine every month, seeking recommendations on businesses to use.

108.   In fact, many consumers believe that Defendants are part of a governmental or quasi-governmental organization, which provides unbiased and accurate information about businesses.

109.   Many customers searching for a registered agent service turn to Defendants' BBBOnLine service in looking for a registered agent service or confirming that the registered agent service they have selected is trustworthy and reliable.

110.   Numerous existing and prospective customers of Incorp have used Defendants' BBBOnLine service to review the letter grade for Incorp. Many of these customers have seen that Defendants assigned Incorp an "F" letter grade, even when that grade was unwarranted under Defendants' formula.

111.   Existing customers who viewed Defendants' inaccurate grade of Incorp

**COMPLAINT**

1  believed that Incorp was less trustworthy or reliable than its competitors and either left

2  Incorp or demanded a steep discount in the rate they were required to pay Incorp.

3      112.   Prospective customers who viewed Defendants' inaccurate grade of Incorp

4  believed that Incorp was less trustworthy or reliable than its competitors, and opted to

5  use a different registered agent service.

6      113.   Thus, as a result of Defendants' inaccurate grading system, Incorp has

7  been substantially harmed, and no adequate remedy exists in law to redress that harm.

8                              **FIRST CAUSE OF ACTION**
   **FALSE ADVERTISING & CONTRIBUTORY FALSE ADVERTISING UNDER THE**
9                    **LANHAM ACT (15 U.S.C. §1125(a))**

10     114.   Incorp repeats and incorporates by reference all of the allegations set forth

11  above.

12     115.   Defendants intentionally and with knowledge published false descriptions

13  and representations of fact about their own services.  To wit, Defendants claimed that

14  they offered an unbiased and accurate rating system for businesses, when in fact their

15  rating system was biased, inaccurate, and failed to comply with the formula Defendants

16  advertised.

17     116.   On information and belief, Defendant Campbell intentionally and with

18  knowledge served as a conscious force behind Defendants' false statement, in that she

19  knowingly participated in, authorized, and/or approved the acts of false advertising

20  described above.

21     117.   Defendants intentionally and with knowledge published false descriptions

22  and representations of fact about Incorp.  To wit, Defendants claimed that Incorp

23  deserved a letter grade of "F," or "NR," or other lesser grades than warranted by

24  Defendants' grading formula, which grades indicated a lack of trustworthiness and

25  reliability of Incorp as a business, when in fact no facts justified such a letter grade, and

26  Defendants were aware that no such facts existed.

27     118.   Defendants' statements misrepresented the quality and nature of Incorp's

28  professionalism and client dedication as well as the quality, reliability, and safety of

**COMPLAINT**

1   Incorp's services.

2   119.   Defendants made these false statements on their BBBOnline service, which

3   is visited by millions of consumers each month.

4   120.   Defendants made their false statements to discourage consumers from

5   using Incorp's services, and to encourage people to use Accredited competitors of

6   Incorp.

7   121.   As a result of Defendants' statements, Incorp has been substantially

8   harmed.

9   **SECOND CAUSE OF ACTION**
**BUSINESS DISPARAGEMENT (NEVADA COMMON LAW)**

10

11   122.   Incorp repeats and incorporates by reference all of the allegations set forth

above.

12

13   123.   Defendants intentionally and with knowledge published false and

disparaging descriptions and representations of fact about Incorp.  To wit, Defendants

14

15   claimed that Incorp deserved a letter grade of "F," or "NR," or other lesser grades than

warranted by Defendants' grading formula, which grades indicated a lack of

16

17   trustworthiness and reliability of Incorp as a business, when in fact no facts justified such

a letter grade, and Defendants were aware that no such facts existed.

18

19   124.   Defendants' statements misrepresented the quality and nature of Incorp's

professionalism and client dedication as well as the quality, reliability, and safety of

20

21   Incorp's services.

22   125.   Defendants' false and disparaging statements about Incorp were made

without any privilege.

23

24   126.   Defendants made the false and disparaging statements about Incorp with

actual knowledge and/or reckless disregard for the truth, and thus with malice.

25

26   127.   Defendants made their false statements discourage consumers from using

Incorp's services, and to encourage people to use accredited competitors of Incorp.

27

28   128.   Defendants' false and disparaging statements about Incorp have caused

15

**COMPLAINT**

1  Incorp direct economic loss.

2  **PRAYER FOR RELIEF**

3      WHEREFORE, Plaintiff respectfully request relief as follows:

4  A.    That the Court enter a judgment in favor of Incorp and against Defendants that

5      they are:

6      a.    Liable to Incorp for contributory false advertising under 15 U.S.C. §1125(a).

7      b.    Liable to Incorp for business disparagement under Nevada common law.

8  B.    That the Court enter a judgment in favor of Incorp and against Defendants,

9      awarding Defendants:

10      a.    Compensatory damages for false advertising and contributory false

11      advertising under 15 U.S.C. §1117(a);

12      b.    Treble damages against Defendants, under 15 U.S.C. §1117(a) for their

13      oppression, fraud, and malice in their false advertising;

14      c.    Direct, compensatory, general, special, and consequential damages

15      against Defendants for business disparagement;

16      d.    Punitive damages against Defendants, under N.R.S. 42.005(e) for

17      oppression, fraud, and malice for Defendants' business disparagement;

18      e.    Attorneys' fees and necessary expenses against Defendants under 15

19      U.S.C. §1117(a);

20      f.    All costs of this action;

21      g.    Pre-judgment interest.

22  C.    That the Court grant to Incorp such additional relief as is just and proper.

23  DATED: May 6th, 2010        **GOOLD PATTERSON ALES & DAY**

24

25          BY: _____

26          Douglas L. Monson, Esq.(SNB 7829)
        4496 South. Pecos Road.

27          Las Vegas, NV  89121
        Phone: (702) 436-2600; Fax: (702) 436-2650

28          dmonson@gooldpatterson.com
        Attorneys for Plaintiff

**COMPLAINT**

1

**REQUEST FOR JURY TRIAL**

2    Plaintiff Incorp Services, Inc. hereby demands a trial of this action by jury.

3

4    DATED: May _6th_, 2010                    **GOOLD PATTERSON ALES & DAY**

5

6                                              BY: _____

7                                              Douglas L. Monson, Esq. (SBN 7829)
                                               4496 South. Pecos Road.
8                                              Las Vegas, NV  89121
                                               Telephone: (702) 436-2600
9                                              Facsimile: (702) 436-2650
                                               dmonson@gooldpatterson.com
10                                             Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

**EXHIBIT 1**

**EXHIBIT 1**

BetterBusinessBureau

http://www.southernnevada.bbb.org/bbb_rated_acc_rpt.asp?bbbid=59882&tr=A&lg=A&ex=1

5/5/2010 12:03 PM



BBB issues Reliability Reports on all businesses, whether or not they are BBB accredited. If a business is a BBB Accredited Business, it is stated in this report.

**Find out more about this business:**

BBB Accreditation                    Licensing
BBB Rating                           Customer Complaint History
Business Contact and Profile         Government Action(s)
Products and Services                Advertising Review
Business Management                  BBB Copyright and Reporting Policy

**BBB Accreditation**

This company is not a BBB Accredited Business.

**BBB Rating**

Based on BBB files, this business has a BBB rating of A.

Reasons for this rating include:
  This business has no rating at this time because the rating is being reviewed and/or updated.

Click here for an explanation of BBB Ratings.

**Business Contact and Profile**

Company Name: Incorp Services, Inc.
Company Address: 375 N. Stephanie St. #1411
                Henderson, NV 89014-8909
Phone Number: (702) 866-2500
Original Business Start Date: March 2001
Local Business Start Date: July 2006
Type of Entity: Corporation
Incorporated: 1/13/1999 in NV
Principal: Tennie Sedlacek, President
Customer Contact: Gayle Clauges, Director of Customer Svc.
BBB Accreditation Status: This company is not a BBB Accredited Business.
Type of Business: Incorporating Services
Web Site Address: www.incorp.com

**Products and Services**

http://www.southernevada.bbb.org/bbb_rated_acc_rpt.asp?bbbid=59882&tr=A&lg=A&ex=1

BetterBusinessBureau

5/5/2010 12:03 PM

**EXHIBIT 2**

**EXHIBIT 2**

BetterBusinessBureau

http://www.southernnevada.bbb.org/bbb_rated_acc_rpt.asp?bbbid=59882&tr=F&lg=F&ex=1



BBB issues Reliability Reports on all businesses, whether or not they are BBB accredited. If a business is a BBB Accredited Business, it is stated in this report.

**Find out more about this business:**

BBB Accreditation
BBB Rating
Business Contact and Profile
Products and Services
Business Management

Licensing
Customer Complaint History
Government Action(s)
Advertising Review
BBB Copyright and Reporting Policy

**BBB Accreditation**

This company is not a BBB Accredited Business.

**BBB Rating**

Based on BBB files, this business has a BBB rating of F.

Reasons for this rating include:
• This business has no rating at this time because the rating is being reviewed and/or updated.

Click here for an explanation of BBB Ratings.

**Business Contact and Profile**

Company Name: Incorp Services, Inc.
Company Address: 375 N. Stephanie St. #1411
                 Henderson, NV 89014-8909
Phone Number: (702) 866-2500
Original Business Start Date: March 2001
Local Business Start Date: July 2008
Type of Entity: Corporation
Incorporated: 1/13/1998 in NV
Principal: Tennie Sediacek, President
Customer Contact: Gayle Clauges, Director of Customer Svc.
BBB Accreditation Status: This company is not a BBB Accredited Business.
Type of Business: Incorporating Services
Web Site Address: www.incorp.com

**Products and Services**

5/5/2010 12:04 PM

http://www.southernnevada.bbb.org/bbb_rated_acc_rpt.asp?bbbid=59882&r=F&lg=F&ex=1

BetterBusinessBureau